UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KETYA BAXTER,<br><br>Plaintiff,<br><br>-v-<br><br>HF MANAGEMENT SERVICES, LLC a/k/a Healthfirst and JOHN STAVLAS,<br><br>Defendants. | 24 Civ. 5762 (JPC)<br><br>OPINION AND ORDER |

JOHN P. CRONAN, United States District Judge:

Plaintiff Ketya Baxter was laid off after her employer, Defendant HF Management Services, LLC ("Healthfirst"), and her supervisor for eight months there, Defendant John Stavlas, initiated a reorganization of her department and reduced the number of full-time employees that would perform her role. Plaintiff interviewed for the last remaining spot but was not selected. Though invited to apply for another position at Healthfirst, she declined to do so. Healthfirst then terminated her. Plaintiff now brings this action alleging that Healthfirst discriminated against her based on her race, ethnicity, and disability status, and retaliated against her for requesting reasonable accommodations and taking leave under the Family and Medical Leave Act ("FMLA"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the FMLA, and 42 U.S.C. § 1981. She further alleges that Stavlas aided and abetted the company's alleged violations of the NYSHRL and the NYCHRL.

With discovery closed, Defendants have moved for summary judgment on all those claims. Because Plaintiff does not set forth sufficient evidence that would allow a rational jury to find in her favor on any of them, the Court grants Defendants' motion in its entirety.

## I. Background

### A. Factual Background[1]

Plaintiff was born in Brazil and immigrated to the United States in 2005. Defts. 56.1 Stmt. ¶ 2. She suffers from bipolar disorder and ADHD. Pl. 56.1 Stmt. ¶¶ 45-46. She began working for Healthfirst's marketing department as an administrative assistant in 2017. Defts. 56.1 Stmt. ¶ 3. In January 2019, Plaintiff was promoted to Marketing Operations Specialist in the Marketing Operations Group, *id.* ¶ 6; Baxter Dep. Tr. at 78:19-79:2, a role she occupied until her termination in March 2023, Defts. 56.1 Stmt. ¶ 40. In March 2020, at the onset of the Covid-19 shutdown, Plaintiff started working remotely from her New York City home and, in May 2022, she moved to Poughkeepsie, New York, from where she continued working remotely for the remainder of her time at Healthfirst. *Id.*

[1] The following facts are drawn primarily from the parties' statements and counterstatements of undisputed material facts under Local Civil Rule 56.1(a), Dkt. 52 ("Defts. 56.1 Stmt."); Dkt. 56 ("Pl. 56.1 Stmt."); Dkt. 61 ("Defts. 56.1 Counter Stmt."), and the declarations and affirmations filed by the parties with attached exhibits, Dkt. 49 ("Marks Decl."); Dkt. 50 ("Stavlas Aff."); Dkt. 51 ("Kelling Aff."); Dkt. 55 ("Goddard Decl."); Goddard Decl., Exh. 1 ("Baxter Decl."); Dkt. 60 ("Second Marks Decl."). Unless otherwise noted, the Court cites only to a party's statement of undisputed material facts when the opposing party does not dispute the fact, has not offered admissible evidence to refute it, or simply seeks to add its own "spin" on the fact or otherwise disputes the inferences drawn from it. Among the exhibits filed by the parties were transcript excerpts from the depositions of Plaintiff, Remona Cope, and Jessica Liberov. Those deposition transcripts are located at: (1) Marks Decl., Exh. A, Goddard Decl., Exh. 1, and Second Marks Decl., Exh. A, collectively "Baxter Dep. Tr."; (2) Marks Decl., Exh. C, and Goddard Decl., Exh. 7, collectively "Cope Dep. Tr."; and (3) Marks Decl., Exh. E ("Liberov Dep. Tr.").

Plaintiff equivocates about her racial identity. Her Second Amended Complaint alleges that "she is a non-white, non-Hispanic minority of Brazilian descent." Dkt. 24 ("SAC") ¶ 10. But in her deposition, she testified that while working for Healthfirst she identified as Caucasian, Baxter Dep. Tr. at 69:10-13, that her ancestors in Brazil would identify as white in census records, *id.* at 70:19-24, and that she herself identifies as a "white Brazilian," *id.* at 72:18-21 ("Q. Did you mean to say you were white Brazilian? A. Yeah. That was the intent there, yeah."). Because she considers herself to be Brazilian and not Hispanic, she sometimes marks Hispanic and sometimes marks white when identifying her race. *Id.* at 69:19-70:5. At the same time, she does not consider herself white according to the ordinary United States meaning of the term. *Id.* at 295:17-20 ("Q. Do you consider yourself to be white by the United States definition of white? A. No."). Notwithstanding how Plaintiff identified, her co-workers perceived her as Caucasian. *See* Stavlas Aff. ¶ 5 ("I perceived [Plaintiff] to be Caucasian. [Plaintiff] never told me that she was non-White and I never perceived her as non-White."); Kelling Aff. ¶ 8 ("[Plaintiff] appears to be Caucasian."); Cope Dep. Tr. at 46:14-15 ("Q. What about [Plaintiff], is she Caucasian? A. Yes."); Liberov Dep. Tr. at 48:9-11 ("The only time I ever saw a picture of her . . . she looked white . . . .").

Stavlas began supervising Plaintiff in July 2022. Stavlas Aff. ¶ 4. Plaintiff thought little of his management style, and in early August, she emailed the human resources department to opine that the transition to his leadership was "going about as poorly as [she] could have ever imagined," complaining that Stavlas "sent very strong and threatening messages to [her] and the team verbally"; that Stavlas did not "put things into writing, which makes it very hard to navigate"; and that he "treat[ed] [her] with zero respect," though that treatment was not unique to Plaintiff because "[i]t appear[ed] to be similar with other members of the team." Marks Decl., Exh. G ("8/3/22 Email") at Baxter000792-000794. In that email, Plaintiff apologized for "the long

message" and further explained that she was "basically waiting to get fired," and was "not asking for [the human-resources colleague's] help, because [Plaintiff has] been around long enough to know that this will not change, and that it will not end well for [her]." *Id.* at Baxter000795. Plaintiff and Stavlas met later that month, and according to follow-up she sent him, he "acknowledg[ed] that the workload [was] not sustainable without significant changes," and told her that her "physical and mental health needs to come first." Marks Decl., Exh. H ("8/29/2022 Email") at Baxter000733-000734.

Also that month, Plaintiff complained to her manager, Tara Kelling, that Kelling sent her emails with assignments at late hours. Defts. 56.1 Stmt. ¶ 17; Kelling Aff. ¶ 3. Kelling assured Plaintiff that she was not expected to act on those emails until the morning. Kelling Aff. ¶ 3; Pl. 56.1 Stmt. ¶ 59; Baxter Dep. Tr. at 214:4-11.

On September 1, 2022, Plaintiff asked her psychiatrist for a doctor's note that would allow her to "take mental health leave" from Healthfirst due to her "anxiety and sleep deprivation" from being overworked. Marks Decl., Exh. I at HF1193. On October 5, 2022, Stavlas learned that Plaintiff had requested leave starting on October 24, though he was not informed of the basis for that request. Defts. 56.1 Stmt. ¶ 19. He contacted her the next day to "make sure all is well and get a plan in place." *Id.* At no point did Plaintiff tell Stavlas or Kelling that she was bipolar or depressed, that she has ADHD, or that she suffers from generalized anxiety disorder. *Id.* ¶ 20; *see* Baxter Dep. Tr. at 110:8-15, 110:19-24. Plaintiff began her leave of absence in late October 2022. *See* Defts. 56.1 Counter Stmt. ¶ 62.

When Plaintiff returned to work on January 9, 2023, she provided Healthfirst a fitness-for-duty certification[2] that stated that she could return to work with restrictions. *See* Marks Decl., Exh. K. The restrictions included that Plaintiff's work schedule should be confined to "normal work hours (9 am → 5 pm) only with adequate breaks throughout the day" and that "[s]upervisory expectations should be extremely clear and specific." *Id.* By this point, the busy season typical of the fall months at Healthfirst had ended, and the Marketing Operations Group had hired three temporary workers. Defts. 56.1 Stmt. ¶ 21. Upon her return to work, Plaintiff received relatively few assignments and those assignments tended to be easy ones, Defts. 56.1 Counter Stmt. ¶ 66, and at no time after her return did Plaintiff report working outside normal business hours, Defts. 56.1 Stmt. ¶ 22.

Meanwhile, Stavlas had been executing a plan to reorganize the Marketing Operations Group. *See* Stavlas Aff. ¶¶ 6-10 (explaining the reorganization). Stavlas conceived of the reorganization as early as July 2022, when he began overseeing the Marketing Operations Group. *See id.* ¶ 6. Because the group's workload fluctuated, Stavlas wanted to obtain "the freedom and flexibility to bring on and offload staff as easily and seamlessly as possible." *Id.* This meant cutting all but one of the full-time Marketing Operations Specialists and hiring temporary contractors, who were "less expensive" to Healthfirst than full-time employees. *Id.* ¶¶ 6, 11. Stavlas's reorganization plan was approved in mid-October 2022, *id.* ¶ 10, but he did not implement it until March 2023, *id.* ¶ 12. In the meantime, he hired three contractors who were

[2] U.S. Department of Labor regulations provide that an employer may institute a policy requiring an employee who "take[s] leave for [a serious health condition that made the employee unable to perform the employee's job] to obtain and present certification from the employee's health care provider that the employee is able to resume work." 29 C.F.R. § 825.312(a). The "employer may seek a fitness-for-duty certification only with regard to the particular health condition that caused the employee's need for FMLA leave. The certification from the employee's health care provider must certify that the employee is able to resume work." *Id.* § 825.312(b).

working in the Marketing Operations Group when Plaintiff returned from her leave in January 2023. *Id.* ¶ 10. The full-time employees and contractors performed similar roles, but the full-time employees had greater responsibility. *Id.* ¶ 11.

In March 2023, Stavlas began implementing the reorganization. *Id.* ¶ 12. He retained Kelling as the Marketing Operations Group team lead, *id.*, announced that Healthfirst would cut all but one of the Marketing Operations Specialist positions, and invited Plaintiff and her colleagues to interview for that remaining spot, Defts. 56.1 Stmt. ¶ 23. On March 23, 2023, a human resources employee asked Plaintiff whether she would like to interview, and she replied that she would but that she doubted the "integrity" of the interview process because she believed "[l]eadership clearly wants [her] gone," she has "seen [her] termination coming for months[] and ha[s] been actively trying to solicit feedback on where [she] stand[s] to avoid being fired," and she feels as if she had "a target on [her] back in this department for years, ever since" she disclosed a romantic relationship with "a member of the executive team." Marks Decl., Exh. N ("3/23/23 Email") at Baxter001074.

Only Plaintiff and another colleague, Remona Cope, who is black, applied for that position. Defts. 56.1 Stmt. ¶ 23. Stavlas, Kelling, and a third person conducted the interviews and unanimously selected Cope for the role. *Id.* ¶ 26. Cope has a master's degree, had worked for two years before for WebMD in a similar role to Marketing Operations Specialist, *id.*; Cope Dep. Tr. at 9:12-13, 9:20, and had been working as a Marketing Operations Specialist since December 2018, Cope Dep. Tr. at 8:12-17—almost exactly as long as Plaintiff had been in the same role, *see* Defts. 56.1 Stmt. ¶ 6.

Though Plaintiff was informed she could apply to any other internal posting listed on the Healthfirst job board, she declined to do so. *Id.* ¶ 27; Stavlas Aff. ¶ 14. She was laid off on April

3, 2023. Stavlas Aff. ¶ 14. At no time while working for Healthfirst did Plaintiff ever complain of disability discrimination. Defts. 56.1 Stmt. ¶ 29.

**B. Procedural History**

Plaintiff initiated this action in New York Supreme Court, New York County, by summons and complaint on June 25, 2024, and Defendants timely removed it to this Court on July 30, 2024. *See* Dkt. 1. Plaintiff amended her complaint on November 6, 2024, Dkt. 16, and further amended it approximately two months later, filing the operative Second Amended Complaint on January 16, 2025, Dkt. 24. The Second Amended Complaint brings claims against Healthfirst for disability discrimination based on theories of failure to grant a reasonable accommodation, wrongful termination, and hostile work environment in violation of the ADA, the NYSHRL, and the NYCHRL ("First Cause of Action"), SAC ¶¶ 74-80; discrimination based on race and ethnicity in violation of 42 U.S.C. § 1981, Title VII, the NYSHRL, and the NYCHRL ("Second Cause of Action"), *id.* ¶¶ 81-85; and retaliation for engaging in protected activities, specifically complaining about disability discrimination and taking a medical leave of absence, in violation of the ADA, the FMLA, the NYSHRL, and the NYCHRL ("Third Cause of Action"), *id.* ¶¶ 86-89. The Second Amended Complaint also alleges that Stavlas aided and abetted discrimination and retaliation in violation of the NYSHRL and the NYCHRL ("Fourth Cause of Action"). *Id.* ¶¶ 90-94. After the Court denied without prejudice Defendants' motion to dismiss the action, *see* Minute Entry, Sept. 3, 2025; Dkt. 46, Defendants filed an Answer to the Second Amended Complaint on September 17, 2025, Dkt. 47.

On October 21, 2025, following the completion of discovery, Defendants moved for summary judgment on all of Plaintiff's claims. Dkts. 48-52, 53 ("Motion"). Plaintiff opposed the

motion on November 20, 2025, Dkts. 54 ("Opposition"), 55-56, and Defendants replied on December 18, 2025, Dkts. 59 ("Reply"), 60-61.

## II. Legal Standard

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In conducting this review, the Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in favor of the nonmoving party." *Mhany Mgmt.*, 819 F.3d at 620.

"The movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,' and, if satisfied, the burden then shifts to the non-movant to present 'evidence sufficient to satisfy every element of the claim.'" *Chen*, 2019 WL 1244291, at *4 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citation modified). The non-movant must present more than a "scintilla of evidence" to survive summary judgment. *Anderson*, 477 U.S. at 252. "Where no

rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation modified).

## III. Discussion

### A. No Rational Jury Could Find that Healthfirst Discriminated Based on Plaintiff's Race.

Plaintiff contends that Healthfirst fired her because of her race and ethnicity[3] in violation of federal, state, and city law. *See* SAC ¶¶ 81-85. Title VII, the NYSHRL, and the NYCHRL prohibit discrimination in employment based on race and ethnicity. *See* 42 U.S.C. § 2000e-2(a); N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a).[4] Section 1981 guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citation modified).

---

[3] The Second Circuit has held that discrimination based on ethnicity violates the prohibitions on race-based discrimination under Title VII and Section 1981. *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) ("[D]iscrimination based on ethnicity, including Hispanicity or lack thereof, constitutes racial discrimination under Title VII."); *see id.* at 606 ("[I]t has long been settled in this circuit that Hispanics comprise a distinct race for purposes of § 1981."). Courts in this District have also construed the NYCHRL and the NYSHRL to prohibit ethnicity-based discrimination, though not necessarily as a violation of the prohibition on racial discrimination. *See, e.g.*, *Skaf v. Google LLC*, No. 25 Civ. 6029 (JMF), 2026 WL 2185588, at *7 (S.D.N.Y. July 29, 2026) (NYCHRL); *Kiseleva v. Greenspan*, 755 F. Supp. 3d 367, 383 (S.D.N.Y. 2024) (NYSHRL).

[4] Because the Court determines that summary judgment is warranted on the merits of Plaintiff's NYCHRL claim, it need not address whether she falls within that statute's geographic protection. *See* Motion at 10 (arguing that the Court should dismiss Plaintiff's NYCHRL claims because she lived and worked in Poughkeepsie, New York, for the entirety of the alleged discriminatory and retaliatory conduct).

Because the NYCHRL imposes the most favorable standards for Plaintiff, the Court begins with her race-based and ethnicity-based discrimination claim under that law. *See Kurtanidze v. Mizuho Bank, Ltd.*, No. 23 Civ. 8716 (PAE), 2025 WL 1898927, at *11 (S.D.N.Y. July 9, 2025) (analyzing the NYCHRL claims first and explaining that the NYCHRL's liability standards are more lenient than those of Title VII and Section 1981). "While claims under the NYCHRL and NYSHRL are more liberally construed than claims under Title VII, neither statute alters the kind, quality, or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Reach v. Healthfirst, Inc.*, No. 23 Civ. 8085 (JPO), 2026 WL 1802838, at *6 (S.D.N.Y. June 23, 2026) (citation modified).

A claim of discrimination under the NYCHRL requires a plaintiff to "only show differential treatment—that she is treated less well—because of a discriminatory intent." *Mihalik*, 715 F.3d at 110 (citation modified). A defendant moving for summary judgment on a NYCHRL discrimination claim must prevail "under both the familiar framework of *McDonnell Douglas* and under the newer mixed motive framework, which imposes a lesser burden on a plaintiff opposing such a motion." *Jones v. City of New York*, No. 22-1867, 2023 WL 6205630, at *1 n.1 (2d Cir. Sept. 25, 2023) (summary order) (citation modified); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must first "establish a prima facie case of discrimination, and the defendant then has the opportunity to offer legitimate reasons for its actions." *Spires v. MetLife Grp., Inc.*, No. 21-2014, 2023 WL 545350, at *1 (2d Cir. Jan. 27, 2023) (summary order) (citation modified). "If the defendant satisfies that burden, summary judgment is appropriate if no reasonable jury could conclude either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Chen v. City Univ. of N.Y.*, 805 F.3d 59,

76 (2d Cir. 2015) (citation modified). So summary judgment is appropriate as to a NYCHRL discrimination claim "if the record establishes as a matter of law that discrimination . . . played no role in the defendant's actions." *Id.* (citation modified). At the same time, "'district courts must be mindful that the NYCHRL is not a general civility code,' and a plaintiff must still establish 'a discriminatory motive' for any complained-of conduct." *Uttarwar v. Lazard Asset Mgmt. LLC* ("*Uttarwar I*"), No. 22 Civ. 8139 (DEH), 2024 WL 1251177, at *7 (S.D.N.Y. Mar. 22, 2024) (quoting *Mihalik*, 715 F.3d at 110). "It is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part *because of* her [protected characteristic]." *Id.* (quoting *Mihalik*, 715 F.3d at 110).

Plaintiff fails to establish *prima facie* discrimination based on her race or ethnicity because she fails to proffer evidence supporting causation, and therefore no reasonable jury could infer that race or ethnicity was a factor in her termination. "For the purposes of [the] NYCHRL, a discriminatory motive can be shown either by . . . direct evidence of discrimination, including comments indicating prejudice on account of a protected characteristic, or by . . . facts showing that comparators were treated better than the plaintiff was." *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022) (citation modified). Plaintiff does not present any direct evidence of discrimination, such as disparaging or harassing comments. *See generally* Opposition. And while Plaintiff tries to make a comparator argument, *see id.* at 18-19, she fails to present any facts indicating that similarly-situated comparators outside of her protected group were treated better than she was. *See Bautista*, 642 F. Supp. 3d at 428.

Plaintiff contends that Stavlas favored the white temporary contract workers over her, a non-white Brazilian. *See* Opposition at 17 (arguing that the contract workers "[a]ll . . . are white"), 18-19 (arguing that the contract workers are appropriate comparators); SAC ¶ 63 ("Stavlas planned

to replace the non-white Marketing Operations Specialists with the white temps."). But the Court cannot draw an inference of discriminatory intent from Defendants' hiring of the contract workers because Plaintiff fails to create a genuine dispute as to whether she and those contract workers were similarly situated. "To be 'similarly situated,' the individuals with whom [Plaintiff] attempts to compare herself must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). Plaintiff was a full-time Marketing Operations Specialist, while the contractors were temporary hires on a contract basis. *See* Stavlas Aff. ¶ 10 (calling the contractors "contingent workers"). While some of their work was the same, full-time "employees were more responsible from a leadership standpoint of making recommendations," the contractors were "less expensive," *id.* ¶ 11, and the contractors could be retained and discharged more flexibly to accommodate the "seasonality" of Healthfirst's work, *id.* ¶ 6. Indeed, courts routinely decline to consider full-time employees as similarly situated with contractors. *See, e.g.*, *Kaplan v. Beth Israel Med. Ctr.*, No. 07 Civ. 8842 (RPP), 2010 WL 1253967, at *3 (S.D.N.Y. Mar. 31, 2010); *Perugini v. Stryker Orthopaedics*, No. 3:08cv404 (MRK), 2009 WL 3254492, at *4 (D. Conn. Oct. 6, 2009) (collecting cases); *Robinson v. Keyspan*, No. 03 Civ. 4796 (FB), 2005 WL 3006687, at *5 (E.D.N.Y. Nov. 9, 2005).

Plaintiff's theory of race-based discrimination suffers from another flaw. Even if the contractors were similarly situated to her, she puts forward no evidence indicating that Healthfirst employees, including Stavlas and Kelling, perceived her race as any other than Caucasian. Plaintiff generally identifies as a "white Brazilian," Baxter Dep. Tr. at 72:18-21, and identified as Caucasian while working for Healthfirst, *id.* at 69:10-13. Of course, the Court is "ill-equipped to make judgments about whether" someone "is of a specific race," but the relevant question here is not what Plaintiff's race actually is, rather "what the individuals involved in the decision to

terminate knew or believed" it to be. *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 213 (S.D.N.Y. 2017) (collecting cases). Plaintiff does not point to any fact contravening the ample evidence showing that her colleagues viewed her as white. *See* Stavlas Aff. ¶ 5 ("I perceived [Plaintiff] to be Caucasian. [Plaintiff] never told me that she was non-White and I never perceived her as non-White."); Kelling Aff. ¶ 8 ("[Plaintiff] appears to be Caucasian."); Cope Dep. Tr. at 46:14-15 ("Q. What about [Plaintiff], is she Caucasian? A. Yes."); Liberov Dep. Tr. at 48:9-11 ("The only time I ever saw a picture of her . . . she looked white . . . ."). Thus, even were Plaintiff and the contractors similarly situated, there would be no basis to infer racial discrimination, because, based on the undisputed evidence, Plaintiff and the contractors were all the same race from Healthfirst's perspective. *See Toussaint*, 230 F. Supp. 3d at 212-13 (collecting cases recognizing that "a plaintiff alleging race discrimination cannot establish that he was terminated in circumstances giving rise to an inference of discrimination where the similarly situated comparators are of the same protected class").

Even applying the NYCHRL's lenient standard, Plaintiff has failed to show that Healthfirst's treatment of her was motivated by her race or ethnicity, so no reasonable jury could find that Healthfirst discriminated against her on these bases in violation of that statute. Because Plaintiff's race-based and ethnicity-based claims under the NYCHRL fail as a matter of law for lack of discriminatory intent, they necessarily also fail under the NYSHRL and under the stricter standards of Title VII, *see Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022), and Section 1981, *see Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 47-48 (2d Cir. 2025) (applying *McDonnell Douglas* to a Section 1981 discrimination claim). *See Kurtanidze*, 2025 WL 1898927, at *15. The Court therefore grants summary judgment in Healthfirst's favor on the Second Cause of Action.

**B. No Rational Jury Could Find that Healthfirst Discriminated Based on Plaintiff's Disabilities.**

Next, Defendants move for summary judgment on Plaintiff's claims against Healthfirst of disability discrimination in violation of the ADA, the NYSHRL, and the NYCHRL in the First Cause of Action. She alleges disability discrimination based on three theories: failure to accommodate, hostile work environment, and wrongful termination. *See* SAC ¶¶ 74-80. Summary judgment is warranted as to all of them.

**1. Failure to Accommodate**

The ADA, the NYSHRL, and the NYCHRL use the same standard and framework for failure-to-accommodate claims. *Martinez v. Staten Island Univ. Hosp.*, 814 F. Supp. 3d 380, 407 (E.D.N.Y. 2026); *see Stryker v. HSBC Sec. (USA)*, No. 16 Civ. 9424 (JGK), 2020 WL 5127461, at *11 (S.D.N.Y. Aug. 31, 2020) ("Under the ADA, the NYSHRL, and the NYCHRL, a failure to accommodate claim is a theory of discrimination analyzed under the *McDonnell Douglas* burden-shifting framework."). As with general disability discrimination claims, failure-to-accommodate "claims under the NYCHRL must be considered independently from and more liberally than their federal counterparts," so the Court's analysis proceeds under that statute. *Martinez*, 814 F. Supp. 3d at 407 (citation modified). To establish a *prima facie* case that an employer discriminated by failing to accommodate, a plaintiff must show that

> (1) [she] is a person with a disability under the meaning of the [relevant statute]; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013) (citation modified); *see Stryker*, 2020 WL 5127461, at *11. Plaintiff fails to put forward evidence establishing the second element.

Plaintiff asserts that Healthfirst failed to accommodate her requests in August and September 2022 that Stavlas and Kelling refrain from sending her emails late at night and early in the morning. *See* Opposition at 19. Defendants, however, present evidence indicating that at that time, Stavlas and Kelling did not know that Plaintiff had a disability, *see* Defts. 56.1 Stmt. ¶¶ 20, 30; Kelling Aff. ¶ 2, and Plaintiff fails to put forth any contravening evidence to create a genuine dispute as to that fact. Neither is there evidence that anyone else at Healthfirst knew that Plaintiff had a disability when she made those accommodation requests in August and September 2022.

Plaintiff concedes that Stavlas did not know about her mental conditions. Pl. 56.1 Stmt. ¶¶ 20, 30. And though she asserts that she and Kelling spoke "at length" about her "mental health," the only evidence she cites to support that assertion is irrelevant. *See* Opposition at 20 (citing Baxter Dep. Tr. at 183:20-184:2 ("Q. You spoke with Tara Kelling about your accommodations and then she leaves, right, and then you are asking other people, you call him Ryan, I don't know who that is. Do you know the last name? A. Yeah, Ryan Olive.")). In the cited portion of Plaintiff's deposition, Plaintiff did not address whether she and Kelling ever spoke about her mental conditions, and in any event the testimony concerned events that took place in 2023, which is after the relevant period for Plaintiff's failure-to-accommodate claim, August through October 2022. Baxter Dep. Tr. at 183:20-184:2; *see* Goddard Decl., Exh. 8 (March 2023 email exchange referenced during the deposition excerpt). Plaintiff also states that she "had repeatedly requested an end to the late-night emails, citing her mental health," and cites paragraphs 10 and 12 of the declaration of her counsel, Megan Goddard. Opposition at 20. But the pieces of evidence cited in those paragraphs also do not mention any mental conditions. *See* Goddard Decl. ¶¶ 10 (citing Goddard Decl., Exh. 9 (July 2022 email exchange regarding Plaintiff's mid-year review)), 12 (citing Goddard Decl., Exh. 11 (Stavlas's "Business Justification for Position Eliminations"

memorandum dated January 27, 2023)). Nor do the other exhibits attached to Ms. Goddard's declaration. For instance, on September 2, 2022, Plaintiff forwarded to two human resources employees an email that she had received that morning at 5:12 a.m. from Kelling, and complained that she is "bombarded with emails and assignments being assigned to [her] at 1 am, 2 am, 3 am, etc.," and that she could not meet her boss's unrealistic expectations without working overnight. Goddard Decl., Exh. 10 at Baxter000104. Plaintiff's email stated that "[t]his is past psychological pressure," and though she was leading the brand campaign that was the subject of the early morning email, "[she] believe[d] [Kelling] and [Stavlas] could wait until 8 am to bombard [her] with assignments." *Id.* Approximately fifteen minutes later, Plaintiff again forwarded the 5:12 a.m. email from Kelling, this time to Kelling and Stavlas. Plaintiff wrote: "I have mentioned this before, and I am trying again[.] . . . May I ask you to refrain from assigning projects, sending me notes or emails outside of working hours. This is really affecting my mental health. Thank you for your understanding." Goddard Decl., Exh. 12 ("Second 9/2/22 Email") at HF0381. As Plaintiff herself testified, these complaints reflected requests to change the work culture, not to accommodate a disability. *See* Baxter Dep. Tr. at 290:23-291:2 ("I complained because of the workload, nobody was doing anything about it, not John [Stavlas], not HR.").

Those communications conveyed that Plaintiff felt overworked but not that she had any disability. Though Plaintiff mentioned her "mental health" in her email to Kelling and Stavlas, Second 9/2/22 Email at HF0381, she cites no caselaw establishing that such a general phrase—which is reasonably construed as referring to one's general wellbeing—can constitute notice of any covered disability, and the one judicial decision she does cite undermines her argument. *See* Opposition at 20; *cf. Fisher v. Valley Stream Cent. High Sch. Dist.*, No. 23 Civ. 3449 (NJC), 2025 WL 2467046, at *18 (E.D.N.Y. Aug. 27, 2025) ("[Plaintiff] cites no authority, and I have found

none, supporting the proposition that 'fatigue' and 'stress' caused by an alleged excessive workload constitutes a 'disability' under the ADA."). In that case, *Wellner v. Montefiore Medical Center*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898 (S.D.N.Y. Aug. 29, 2019), the plaintiff's attorney told her employer that the plaintiff was "undergoing psychiatric care . . . and that she want[ed] to go on short-term disability," *id.* at *3 (citation modified)—expressly revealing that the plaintiff suffered some kind of disability. By contrast, nothing in Plaintiff's comments to Healthfirst supervisors or human resources in August and September 2022 indicated that she had a disability of any sort, only that she was concerned about the effects of her assigned work on her "mental health." To be sure, "an employer need not know the exact diagnosis to be liable for discrimination on the basis of a disability," *Glaser v. Gap Inc.*, 994 F. Supp. 2d 569, 578 (S.D.N.Y. 2014), but a plaintiff-employee must put forward some factual basis for concluding that her "employer knew or reasonably show have known that the employee was disabled," *Wellner*, 2019 WL 4081898, at *11 (quoting *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008)). Plaintiff points to no such evidence.

Neither does a review of the record turn up evidence in her favor. While Plaintiff stated in her declaration that "Kelling was aware of [Plaintiff's] anxiety and depression, because [Plaintiff] told her about them," Baxter Decl. ¶ 18, and "Kelling was aware of [her] depression" given their "multiple private conversations about [Plaintiff's] mental health while [she] was still working as an Administrative Assistant," *id.* ¶ 25, those averments fail to create a genuine dispute of fact as to whether Kelling knew or should have known about any disability given Plaintiff's squarely contradictory deposition testimony. Plaintiff testified that she "[p]erhaps" disclosed her depression diagnosis to one colleague, Sarah Loftus, but not to Kelling, and in any event she immediately corrected herself, clarifying she did not think she had told Loftus that information

because it is "such a personal thing" with "such a stigma around [it]." Baxter Dep. Tr. at 110:19-111:7. In light of that deposition testimony, Plaintiff's declaration cannot create a genuine dispute of material fact. *See Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.").

Because Plaintiff fails to put forward evidence showing that Stavlas or Kelling knew that she had a disability in summer and fall 2022, the Court grants summary judgment in Healthfirst's favor on Plaintiff's NYCHRL failure-to-accommodate claim. As the NYCHRL "is recognized as providing more expansive protections for the rights of a person with disabilities than its federal . . . counterpart[]," *Martinez*, 814 F. Supp. 3d at 402, and employs the same standards as its state-law counterpart, *id.* at 401 ("[T]he NYSHRL now aligns with the standards of the NYCHRL." (citation modified)), a claim that fails under the NYCHRL necessarily fails also under the NYSHRL and the ADA. The Court therefore also grants summary judgment in Healthfirst's favor on Plaintiff's failure-to-accommodate claims under the NYSHRL and the ADA.

**2. Hostile Work Environment**

Plaintiff's claim of a disability-based hostile work environment does not fare any better. Here too, she fails to produce any evidentiary support for her argument that her request for Kelling and Stavlas to stop sending her emails late at night "was directly related to her diagnosed disabilities," and thus that "the excessive workload" that she endured before her leave of absence "constituted a hostile work environment on the basis of her disability." Opposition at 22.

To demonstrate a hostile work environment, a plaintiff must prove "that the complained of conduct (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's

protected characteristic." *Shkoza v. NYC Health & Hosps. Corp.*, No. 20 Civ. 3646 (RA), 2021 WL 4340787, at *4 (S.D.N.Y. Sept. 22, 2021) (citation modified) (describing the Title VII standard); *see Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (applying the Title VII standard to the ADA). "Similarly, while the NYCHRL standard is more permissive, omitting the requirement that the complained-of conduct be severe or pervasive, a plaintiff claiming a hostile work environment [must nonetheless] demonstrate that he or she was treated less well than other employees *because of* the relevant characteristic." *Shkoza*, 2021 WL 4340787, at *4 (citation modified) (emphasis in original).

Plaintiff fails to put forward any evidence permitting a rational jury to find causation given the absence of evidence showing that Stavlas or Kelling knew that Plaintiff had any disability when they were dealing with her in fall 2022. *See supra* III.B.1. Without that knowledge, they could not have acted *because of* her disabilities. *See Shkoza*, 2021 WL 4340787, at *4; *see Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 81 (2d Cir. 2005) ("[I]t is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant." (citation modified)). As there is no genuine dispute of material fact with respect to causation, Healthfirst is entitled to summary judgment on Plaintiff's disability-based hostile work environment claims.

**3. Wrongful Termination**

Healthfirst also is entitled to summary judgment on Plaintiff's claim of wrongful termination based on disability. The Court again begins with the NYCHRL and applies "the familiar framework of *McDonnell Douglas* and . . . the newer mixed motive framework, which imposes a lesser burden on a plaintiff opposing such a motion." *Jones*, 2023 WL 6205630, at *1 n.1 (citation modified); *see supra* III.A.

"Absent any other evidence of discrimination, [Plaintiff] must establish that comparators were treated better than she was to survive summary judgment." *Reach*, 2026 WL 1802838, at *8

(citation modified). Plaintiff argues that "when faced with a choice between a non-disabled person who had not taken leave"—that is, Cope—"and one who had, Defendants chose to retain the former." Opposition at 21. But, in addition to the lack of any evidence showing that Stavlas or Kelling had reason to know that Plaintiff had any disability, *see supra* III.B.1, Plaintiff fails to point to any evidence indicating that Cope is "similarly situated [to her] in all material respects," *Shumway*, 118 F.3d at 64; *see* Opposition at 18-19 (arguing only that the *contractors* are appropriate comparators). Plaintiff thus fails to establish a *prima facie* case that Healthfirst had a discriminatory motive for terminating her. *See Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 92-93 (S.D.N.Y. 2024) (collecting cases showing that a plaintiff fails to provide "minimal support for the proposition that the employer was motivated by discriminatory intent" when he does not "identify potential comparators, let alone allege facts indicating that these comparators were similarly situated to" him (citation modified)).

Moreover, even had Plaintiff established a *prima facie* case, Healthfirst has proffered a legitimate, non-discriminatory reason for her termination. Stavlas conceived of a reorganization as early as July 2022, before Plaintiff ever complained about late-night emails threatening her "mental health," 8/29/22 Email; *see* Defts. 56.1 Stmt. ¶¶ 12-13 (describing the reorganization's provenance), and began implementing the reorganization in January 2023, Stavlas Aff. ¶ 12, three months before Plaintiff was fired. *Cf. Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1115 (2d Cir. 1988) ("[A] corporate reorganization and concomitant downsizing [is] . . . a legitimate reason for [the] plaintiff's discharge."); *Olle v. Columbia Univ.*, 332 F. Supp. 2d 599, 616-17 (S.D.N.Y. 2004) (collecting cases). The reorganization called for only one full-time Marketing Operations Specialist, and Plaintiff was invited to interview for that role. Ultimately, Stavlas and the hiring team passed over Plaintiff given Cope's comparable tenure as a Marketing Operations Specialist,

greater work experience in the relevant field at WebMD, and higher level of education. Defts. 56.1 Stmt. ¶ 26; *see* Cope Dep. Tr. at 8:10-17 (explaining she held the same role at Healthfirst since December 2018). "A candidate's superior qualifications for the position at issue is the paradigmatic legitimate, non-discriminatory reason for hiring that candidate." *Champion v. N.Y. State Off. of Parks, Recreation & Historic Pres.*, 500 F. Supp. 3d 26, 42 (S.D.N.Y. 2020) (collecting cases). Defendants then invited Plaintiff to interview for another position at Healthfirst, but she declined. Defts. 56.1 Stmt. ¶ 27; Stavlas Aff. ¶ 14. Only then was she terminated.

Plaintiff has offered no evidence indicating that this legitimate non-discriminatory reason to hire Cope and subsequently terminate Plaintiff was pretextual. She urges the Court to doubt Healthfirst's justification because while Cope holds a master's degree and Plaintiff has a bachelor's degree, Healthfirst hired Kelling as a team lead and manager despite Kelling having only a bachelor's degree. *See* Opposition at 21. The implication of this argument seems to be that Cope's educational record could not have been significant to Healthfirst—and is thus pretext—because her manager, Kelling, had a less advanced degree. But it is of course understandable, if not expected, that a candidate's education level would be a factor, even if not a dispositive one, in an employer's hiring decision. Moreover, Cope's educational background was just one among several reasons that Healthfirst hired her. *See* Defts. 56.1 Stmt. ¶ 26. This one fact is far too thin a reed to conclude that Plaintiff has created a triable issue of fact as to pretext. Moreover, while Healthfirst chose Cope over Plaintiff for the last Marketing Operations Specialist role, Plaintiff was invited to apply for other positions at Healthfirst, but she chose not to. *Id.* ¶ 27; Stavlas Aff. ¶ 14. The Court also notes that Plaintiff's contemporaneous emails described her displeasure with the demanding office environment—and particularly with Stavlas—without any indication that her

medical conditions were a motivation for how she was treated. *See* 8/29/2022 Email at Baxter000733-000734; 3/23/2023 Email at Baxter001074.

Plaintiff fails to put forward any evidence indicating that Healthfirst had a discriminatory motive when it selected Cope as the sole remaining Marketing Operations Specialist and later fired Plaintiff. The Court therefore grants summary judgment in favor of Healthfirst on Plaintiff's wrongful-termination claim under the NYCHRL, the NYSHRL, and the ADA. *See Martinez*, 814 F. Supp. 3d at 401-02.

* * *

As Plaintiff fails to put forward the "minimal evidentiary support for the claim of discriminatory motivation" based on her alleged disabilities, *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citation modified), the Court grants summary judgment in Healthfirst's favor as to Plaintiff's First Cause of Action.

**C. No Rational Jury Could Find that Healthfirst Retaliated Against Plaintiff.**

Summary judgment is warranted as to Plaintiff's Third Cause of Action alleging retaliation by Healthfirst in violation of the ADA, the NYSHRL, the NYCHRL, and the FMLA. *See* SAC ¶¶ 86-89. "[R]etaliation claims are analyzed pursuant to the three-step burden-shifting framework set out in *McDonnell Douglas*, with [the] NYCHRL claims additionally subject to the mixed-motive standard at step three of that framework." *Uttarwar v. Lazard Asset Mgmt. LLC* ("*Uttarwar II*"), No. 24-1085-cv, 2025 WL 704278, at *3 (2d Cir. Mar. 5, 2025) (summary order) (FMLA, NYSHRL, and NYCHRL); *see Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (ADA); *supra* III.A.

**1. Retaliation Under the ADA, the NYSHRL, and the NYCHRL**

In the ADA context, a plaintiff establishes *prima facie* retaliation by showing "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved

in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Tafolla*, 80 F.4th at 125 (citation modified). The NYCHRL and the NYSHRL "diverge from the federal standard with respect to the third element of a *prima facie* case of retaliation, as they do not require that the plaintiff prove any adverse employment action; instead, [she] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Uttarwar I*, 2024 WL 1251177, at *13 (citation modified); *accord Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (citation modified). NYCHRL and NYSHRL defendants "are entitled to summary judgment only if the plaintiff cannot show that retaliation played any part in the employer's decision." *Uttarwar II*, 2025 WL 704278, at *3 (citation modified).

The Court begins the analysis under the NYCHRL and the NYSHRL. *See Edelman*, 141 F.4th at 45 (analyzing NYCHRL and NYSHRL retaliation claims together). Plaintiff contends that Healthfirst retaliated against her after she requested reasonable accommodations starting when she returned from leave in January 2023. *See* Opposition at 20. The Court need not determine whether she has established *prima facie* retaliation because she nevertheless fails to show any evidence that would permit a rational jury to conclude that Healthfirst's non-discriminatory reasons for her termination were a pretext masking a retaliatory motive. To be sure, Plaintiff points to the fact that her termination was, at most, three months after her request for accommodations, and "'temporal proximity, together with other evidence such as inconsistent employer explanations,' may be enough to defeat summary judgment." *Uttarwar II*, 2025 WL 704278, at *4 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013)); *see De Figueroa v. New York State*, No. 17 Civ. 436 (PKC), 2022 WL 4111028, at *8 n.10 (E.D.N.Y. Sept. 8, 2022);

*see also* Opposition at 20. But Healthfirst has carried its burden by offering a legitimate, non-discriminatory reason for firing her. Plaintiff lost her job because of a reorganization. She was invited to interview for the last Marketing Operations Specialist position, lost out to Cope—whom Healthfirst found to be more qualified given her tenure, her prior work at WebMD, and her education level—and then chose not to apply for another Healthfirst position. That is "substantial evidence that legitimate, non-retaliatory reasons motivated their decision." *Uttarwar I*, 2024 WL 1251177, at *15 (citation modified). And Plaintiff fails to carry her burden to show some retaliatory motive. Plaintiff points to nothing other than temporal proximity, yet "temporal proximity alone is not enough to establish pretext in this Circuit." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014). She thus fails to provide any evidence showing that, notwithstanding its legitimate, non-discriminatory justification for her termination, Healthfirst nevertheless was "motivated at least in part by an impermissible motive." *Reichman v. City of New York*, 117 N.Y.S.3d 280, 287 (2d Dep't 2020) (citation modified); *see Uttarwar II*, 2025 WL 704278, at *3 (citing *Reichman* favorably); *see generally* Opposition.

Accordingly, Healthfirst is entitled to summary judgment on Plaintiff's NYCHRL and NYSHRL retaliation claim. And because those statutes offer more protection to retaliation victims than does the ADA, summary judgment is warranted as to Plaintiff's retaliation claim under the ADA, as well. *See Edelman*, 141 F.4th at 45.

**2. FMLA Retaliation**

For similar reasons, there is no genuine dispute of material fact as to Plaintiff's FMLA retaliation claim. Plaintiff alleges that Healthfirst retaliated against her when, after she returned from her FMLA leave in January 2023, they declined to assign her "any work at all" and later terminated her. Opposition at 22. "[A]ssuming *arguendo* that [Plaintiff] succeeded in establishing a prima facie case for" this claim, she "nevertheless fail[s] to create a genuine dispute of material

fact that the defendants' legitimate, nonretaliatory reasons were pretextual." *Uttarwar II*, 2025 WL 704278, at *4. First, Healthfirst explains that while Plaintiff had a lighter workload after she returned than before, it was not zero. *See* Defts. 56.1 Counter Stmt. ¶ 66. The reduction in work reflected that Plaintiff returned after the Marketing Operations Group's busy season concluded. *Id.*; *see* Stavlas Aff. ¶ 6 (explaining that the "workload was materially greater" from May to October). Plaintiff proffers no evidence to rebut this legitimate, non-discriminatory reason for assigning her less work upon her return from leave. Second, for the reasons discussed *supra* at III.C.1, Plaintiff has failed to point to any evidence suggesting that retaliation was a factor in Healthfirst's decision-making other than the fact that she was fired within a few months of her leave. But the temporal proximity of an adverse action and a protected activity alone is insufficient to create a genuine dispute at the summary judgment stage. *See Abrams*, 764 F.3d at 254.

Accordingly, there is no genuine dispute of material fact as to Plaintiff's FMLA retaliation claim, so summary judgment is warranted. The Court therefore grants summary judgment in Healthfirst's favor on the Third Cause of Action.

**D. Stavlas is Entitled to Summary Judgment.**

In light of the foregoing, the Court grants summary judgment on Plaintiff's claim that Stavlas aided and abetted violations of the NYSHRL and the NYCHRL. For the reasons stated above, there was no unlawful conduct for him to aid and abet. So the Court grants summary judgment in Stavlas's favor on Plaintiff's Fourth Cause of Action.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment in its entirety. The Clerk of Court is respectfully directed to enter judgment for Defendants and to terminate the case.

SO ORDERED.

Dated: August 18, 2026
New York, New York

JOHN P. CRONAN
United States District Judge